UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

JERRAD ROBINSON,                                      Case No. 21-CV-2777 (PJS/DTS)

                    Plaintiff,

v.                                                                    ORDER

UNITED STATES OF AMERICA,

                    Defendant.

---

> Stephen C. Fiebiger, STEPHEN C. FIEBIGER LAW OFFICE,
> CHARTERED, for plaintiff.

> Friedrich A. P. Siekert, UNITED STATES ATTORNEY'S OFFICE, for
> defendant.

Plaintiff Jerrad Robinson retired from the Federal Aviation Administration

("FAA") in reliance on a representation from the FAA that he had enough creditable

federal service under the Federal Employees Retirement System ("FERS") to qualify for

a monthly annuity of $6,273.  It turned out, however, that the FAA was mistaken, and

that Robinson was qualified for a monthly annuity of only $5,319.  Had Robinson been

given accurate information at the outset, he would have continued to work until he

qualified for the larger annuity.  Now, though, he is stuck with the smaller annuity.

Robinson brought this lawsuit against the United States, essentially seeking to

recover the difference between the larger annuity that the FAA told him that he would

receive and the smaller annuity that he is in fact receiving.  The government now moves

to dismiss.  Unfortunately for Robinson, the United States enjoys sovereign immunity

from misrepresentation claims such as his, and thus the Court is compelled to grant the

government's motion.

## I.  BACKGROUND

Robinson served as an air-traffic controller with the FAA for just over 20 years,

starting in September 1997.  Am. Compl. ¶ 8, ECF No. 28.  Prior to joining the FAA,

Robinson was in active-duty military service with the United States Army and then

with the Air National Guard.  Am. Compl. ¶¶ 6–7.  Robinson paid a military-service

deposit to the FAA in August 2000, apparently based on the assumption that both his

Army time and his National Guard time would earn federal-service credit under the

FERS.  Am. Compl. ¶ 7.

Robinson applied for retirement in April 2018.  Am. Compl. ¶ 10.  In response to

his application, the FAA issued to Robinson a Certified Summary of Federal Service

("CSFS") that credited him with 27 years, 1 month, and 16 days of federal service,

including 6 years and 2 days of military service.  Am. Compl. ¶¶ 10, 13, 23.  That

amount of federal service would have entitled Robinson to a gross monthly annuity

payment of $6,273 under the FERS.  Am. Compl. ¶ 13.  In reliance on the CSFS,

Robinson retired immediately.  Am. Compl. ¶¶ 14, 26.

Unbeknownst to Robinson, however, the FAA employee who generated his CSFS had made a mistake by counting all of his National Guard service as creditable federal service. Am. Compl. ¶ 15. In fact, only about four months of his National Guard service qualified as federal service under the FERS. Am. Compl. ¶ 23. In reviewing Robinson's retirement application, the United States Office of Personnel Management ("OPM")—which administers the FERS—caught the FAA's error and informed Robinson that his monthly annuity would be substantially less than the CSFS had projected. Am. Compl. ¶¶ 19, 23. At this point, of course, Robinson had already retired in reliance on that projection. After several years of administrative appeals and back-and-forth communications between Robinson and OPM, OPM finally determined that Robinson was entitled to credit for only 7 months and 13 days of military service, and that he was entitled to a monthly annuity of only $5,319. Am. Compl. ¶¶ 19–24.

After OPM issued its final decision, Robinson contacted the FAA to seek the full amount of benefits projected by the CSFS. Am. Compl. ¶¶ 24–25. Counsel for Robinson and counsel for the FAA attempted to negotiate a resolution of the claim, but were unable to come to an agreement. Am. Compl. ¶ 25. Robinson subsequently brought this lawsuit against the FAA under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), seeking damages for the FAA's negligent certification of his creditable federal service. Am. Compl. ¶ 28.

The United States now moves to dismiss Robinson's claim under Fed. R. Civ. P. 12(b)(1), arguing that the claim is barred by sovereign immunity.[1]

## II. ANALYSIS

### A. Standard of Review

When deciding a motion under Rule 12(b)(1), a court "must distinguish between a 'facial attack' and a 'factual attack'" on its jurisdiction. *Branson Label, Inc. v. City of Branson*, 793 F.3d 910, 914 (8th Cir. 2015) (quoting *Osborn v. United States*, 918 F.2d 724, 729 n.6 (8th Cir. 1990)). In ruling on a facial attack, the court "restricts itself to the face of the pleadings and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn*, 918 F.2d at 729 n.6. "Conversely, in a factual attack, 'the existence of subject matter jurisdiction [is challenged] in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered.'" *Branson Label*, 793 F.3d at 914–15 (quoting *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir. 1980)). Here, the United States' sovereign-immunity argument relies solely on the allegations in the amended complaint, and thus raises a facial challenge to the Court's jurisdiction.

### B. Sovereign Immunity

---

[1]The United States advances a number of other grounds for dismissal, while also moving in the alternative for summary judgment. Because the Court finds that the misrepresentation exception deprives it of jurisdiction, however, the Court need not address any of the government's other arguments.

The United States is protected by sovereign immunity.  As a result, courts have no jurisdiction over claims against the United States unless the government waives its sovereign immunity.  *See United States v. Dalm*, 492 U.S. 596, 608 (1990).  Under the FTCA, the United States has consented to being sued for most state-law tort claims.  *See* 28 U.S.C. § 1346(b)(1).  But the FTCA includes a number of exceptions that maintain the sovereign immunity of the United States with respect to certain types of claims.  *See* 28 U.S.C. § 2680.  Among those exceptions is one for "[a]ny claim arising out of . . . misrepresentation . . . ."  *Id.* § 2680(h).

This "misrepresentation exception" to the FTCA's waiver of sovereign immunity "relieves the Government of tort liability for pecuniary injuries which are wholly attributable to reliance on the Government's negligent misstatements."  *Block v. Neal*, 460 U.S. 289, 297 (1983); *see also generally United States v. Neustadt*, 366 U.S. 696 (1961).  The "essence" of a claim that falls within the misrepresentation exception "is the communication of misinformation on which the recipient relies."  *Block*, 460 U.S. at 296.  At the same time, the misrepresentation exception "does not bar negligence actions which focus not on the Government's failure to use due care in communicating information, but rather on the Government's breach of a different duty."  *Block*, 460 U.S. at 297.

Robinson's claim appears to fall squarely within the misrepresentation exception. Robinson claims that the FAA communicated erroneous information to him and that he relied on that erroneous communication to his detriment.  *See* Am. Compl. ¶ 26. Robinson's injuries are thus "wholly attributable to reliance on the Government's negligent misstatements."  *Block*, 460 U.S. 297.

Robinson disagrees.  He argues that the gravamen of his complaint is not that the FAA acted negligently in *communicating information* to him, but that the FAA acted negligently in *calculating his creditable service time*.  Robinson thus analogizes his claim to that of the plaintiff in *Block v. Neal*, in which the Supreme Court found that "the Government's misstatements [were] not essential to plaintiff's negligence claim" because the plaintiff had alleged that she suffered injuries from the Farmers Home Administration's failure to properly "inspect and supervise construction of her house." 460 U.S. at 291, 297.  As the Court pointed out in *Block*, the agency's "duty to use due care to ensure that the builder adhere to previously approved plans and cure all defects before completing construction [was] distinct from any duty to use due care in communicating information to" the plaintiff.  *Id.* at 297.  Robinson argues that, in this case, the FAA's duty to use reasonable care in calculating his creditable service time is "distinct from any duty to use due care in communicating information" to him.  *Id.*

What Robinson overlooks about *Block*, however, is how the Court distinguished *Block* from *United States v. Neustadt*, in which the misrepresentation exception was held to apply because the plaintiff had "alleged no injury that he would have suffered independently of his reliance on the erroneous" communication of information from the government. *Block*, 469 U.S. at 296 (citing *Neustadt*, 366 U.S. at 703–710). Under *Block* and *Neustadt*, application of the misrepresentation exception turns on what caused the plaintiff's injury. If the plaintiff's injury "was proximately caused by [the plaintiff's] reliance upon representations made by the government," *Hamre v. United States*, 799 F.2d 455, 457 (8th Cir. 1986), then the plaintiff's claim—no matter how it is styled—"aris[es] out of . . . misrepresentation" for purposes of 28 U.S.C. § 2680(h) and is barred by sovereign immunity. *See also Najbar v. United States*, 723 F. Supp. 2d 1132, 1136 (D. Minn. 2010) ("Without the 'communication of information,' there would not have *been* an 'alleged wrong.' [Plaintiff] would not have been injured, and she would have no claim against the federal government.").

Here, Robinson has failed to identify any injury that he "would have suffered independently of his reliance on the" FAA's communication of erroneous information to him through the CSFS. *Block*, 469 U.S. at 296. The FAA's negligence in calculating Robinson's creditable service time—in and of itself—caused him no harm, much less the harm for which he seeks to recover in this lawsuit. As Robinson readily admits, OPM

eventually caught the FAA's error and correctly calculated his creditable service time and his annuity payment. Thus, unlike the plaintiff in *Block*—who would have been injured by the government's negligence even if the government had never said a word to her, 469 U.S. at 298—Robinson cannot identify a harm he would have suffered if the FAA had never communicated its negligent miscalculation to him.

Again, Robinson's claim is that he would not have retired when he did—and thus would not have ended up with the lower annuity payment—had he not relied on the FAA's communications about his creditable service time. Am. Compl. ¶¶ 14, 26. It was only because the FAA *communicated* erroneous information to him that Robinson suffered the injury for which he seeks to be compensated. No communication, no injury.

The Court certainly takes no pleasure in its holding. The FAA acted negligently, and its negligence caused harm to Robinson—a long-time employee who had served in his country's armed forces. For the rest of his life, Robinson will experience harm because he relied on the word of the FAA. Robinson has been treated unjustly, but unfortunately his injury is not one for which the United States has consented to be sued.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

-8-

1.      Defendant's motion to dismiss [ECF No. 42] is GRANTED.

2.      Plaintiff's amended complaint [ECF No. 28] is DISMISSED WITHOUT

PREJUDICE for lack of jurisdiction.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  June 14, 2024                         s/Patrick J. Schiltz
                                              Patrick J. Schiltz, Chief Judge
                                              United States District Court